IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES EDWARD SWEAT, ADC #085955, | * * * | |
| Plaintiff, | * | |
| v. | * * | No. 4:19-cv-00095-JJV |
| DOES, Unknown Medical Providers and Staff, Craighead County Detention Center, *et al*. | * * * | |
| Defendants. | * * | |

**<u>MEMORANDUM AND ORDER</u>[1]**

**I.   INTRODUCTION**

Charles Edward Sweat ("Plaintiff) is a prisoner in the Arkansas Department of Correction. He has filed a *pro se* Second Amended Complaint, pursuant 42 U.S.C. § 1983, alleging he was denied constitutionally adequate medical care while he was in the Craighead County Detention Center ("CCDC"). (Doc. No. 9.) Specifically, Plaintiff contends that soon after he arrived at the CCDC, on January 14, 2019, Nurse Doe (who is no longer a party to this action) gave him a tuberculosis vaccine despite his statements to her that he had already received that vaccine while he was in the ADC.[2] (Doc. Nos. 9, 37, 45-2.) Sometime thereafter, Plaintiff's arm allegedly became infected at the injection site "causing swelling, painful lack of use of arm, and permanent damage." (Doc No. 37 at 1.) According to Plaintiff, Defendants Nurse Kara Black and APN Anthony Carter, failed to provide him with constitutionally adequate medical care for his infection,

---

[1] On July 19, 2019, the parties consented to proceed before a United States Magistrate Judge. (Doc. No. 33.)

[2] On July 29, 2019, I dismissed Plaintiff's claims against all Doe Defendants due to a lack of service. (Doc. No. 42.)

and Defendants Officer Becker and Chief Jailer Keith Bowers failed to take corrective action after learning about the allegedly inadequate medical care. (Doc. Nos. 9, 37.)  As relief, Plaintiff seeks a declaratory judgment and damages. (*Id.*)

Plaintiff has filed a Motion for Partial Summary Judgment on the merits of his claim against Defendants Bowers and Becker.  (Doc. Nos. 35, 36, 37, 40.)  Defendants Bowers and Becker have filed a Motion for Summary Judgment arguing they are entitled to dismissal because Plaintiff failed to exhaust his administrative remedies.  (Doc. Nos. 43, 44, 45.)  Defendants Black and Carter have adopted and joined in that Motion. (Doc. Nos. 48, 49.)  Plaintiff has not filed a Response, and the time to do so has expired.

After careful consideration and for the following reasons, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Partial Summary Judgment is DENIED, and his inadequate medical care claims against Defendants Becker, Black, Bowers, and Carter are DISMISSED without prejudice.[3]

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

---

[3] Defendants ask for dismissal with prejudice. (Doc. No. 43 at 2.)  However, it is well settled dismissal due to a failure to exhaust administrative remedies must be without prejudice. *Langford v. Norris,* 614 F.3d 445, 457 (8th Cir. 2010).

interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    ANALYSIS

The Eighth Circuit has clarified I must resolve the exhaustion issue first, and I cannot consider the merits of any unexhausted claims. *See Porter v. Sturm,* 781 F.3d 448, 449, 452 (8th Cir. 2015); *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (unpublished opinion); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion).

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Townsend v. Murphy,* 898 F.3d 780, 783 (8th Cir. 2018). Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211. To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the

applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.*  Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *Id.*

The CCDC's grievance policy in effect at the time of the alleged constitutional violation says a "CCDC Complaint form *shall* be completed by a detainee expressing a grievance." (Doc No. 45-1, 45-6 at 1) (emphasis added).  The Jail Administrator or his/her designee must provide a written response within ten working days.  (*Id.*)  The policy then says a detainee "*may* appeal any response or lack of response to the sheriff, who *shall* respond in writing."  (Doc. No. 45-6 at 2) (emphasis added).

According to the affidavit of Todd Harrrell, who is the Assistant Jail Administrator, Plaintiff filed a grievance on February 1, 2019, which is the only grievance he filed while at the CCDC.  (Doc. No. 45-1.)  Plaintiff has not refuted that assertion.  In his grievance, Plaintiff said:

> Hello. I'm needing to show my grief for a visit to medical on tues., 2019, jan. as I was given a T.B. vacsanation [sic] after I informed the staff on duty that i've had a vacsination [sic] through [the] arkansas department of correction, in 1994, for I.N.H, which would show this [in] my jacket if staff would had look[ed] it up first but [they] didn't and as a result my phycial [sic] being *is now at harms way* as I very much feel, as a result of this, i'm at very much grief to this facility and etc.

(Doc. No. 45-3) (emphasis added).  A non-party jailer responded to the grievance by explaining that Plaintiff had received a T.B. test, and not a vaccine, which was standard procedure for all detainees entering the facility.  (*Id.*)

Defendants argue Plaintiff did not fully exhaust his administrative remedies because he failed to appeal to the Sheriff.  But, as previously pointed out, the policy says a detainee "shall"

4

file a grievance but "may" appeal to the Sheriff.  It is impossible to determine from this ambiguous language whether an appeal to the Sheriff was required or optional.  Further, nothing in the remainder of the CCDC's exhaustion policy clearly states an appeal to the Sheriff is required or that detainees will be barred from filing lawsuits if they fail to do so.  Finally, Plaintiff states, in his Declaration, he appealed to the Sheriff, but received no response.  (Doc. No. 40 at 2.)  Thus, I find Defendants' first argument to be unconvincing.

However, Defendants also contend Plaintiff's sole grievance does not raise the specific claims he is attempting to bring against them in this lawsuit.  On this point, I agree.  In the February 1, 2019 grievance, Plaintiff alleged unknown staff, who have already been dismissed from this lawsuit, improperly gave him a redundant T.B. vaccine.  Although Plaintiff said he feared he could be harmed by receiving the vaccine twice, he did not allege, as he does in this lawsuit, that the injection site had been become infected, that Defendants Black and Carter denied him medical care for that infection, or that Defendants Bowers and Becker failed to take proper corrective action after learning about the matter.

"When multiple prison condition claims have been joined . . . the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims." *Kozohorsky v. Harmon*, 332 F.3d 1141, 1143 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).  In other words, a prisoner must exhaust his administrative remedies as to each claim before pursuing those claims in federal court.  *See Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014) (finding improper exhaustion when the prison "was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). The undisputed evidence demonstrates Plaintiff did not do so.   Thus, his claims against Defendants Becker, Black, Bowers, and Carter must be dismissed without prejudice.  *See Jones,* 549 U.S. at

5

211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. On this matter, the Eighth Circuit has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson,* 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 43) is GRANTED, Plaintiff's claims against Defendants Becker, Black, Bowers and Carter are DISMISSED without prejudice, and the case is CLOSED.

2.    Plaintiff's Motion for Partial Summary Judgment (Doc. No. 35) is DENIED.

3.    It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order and the accompanying Judgment would not be taken in good faith.

DATED this 21st day of August 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE